UNITED STATES DISTRICT COURT
DISTRICT OF SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **Kristi Jackson and Brandon Sargent** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Citrix Systems, Inc.** a Delaware Corporation,<br><br>Defendant. | Case No.<br><br><br><br><br><br><br><br>**Demand for Jury Trial** |

## Class Action Complaint

Kristi Jackson and Brandon Sargent ("Plaintiffs"), individually and on behalf of a class of persons similarly situated (the "Class"), bring this class action against Defendant Citrix Systems, Inc. ("Citrix" or "Defendant") seeking equitable relief and damages as set forth below.

## SUMMARY

1. Citrix represented to their employees through their data policy that they would protect their personally identifiable information ("PII"). Plaintiffs relying on that representation gave Citrix their PII, only for Citrix to have no security measures in place to protect it.

2. Citrix describes itself as focusing "on a single driving principle: making the world's apps and data secure and easy to access." However, they failed to implement even the most basic security measures for their own employees.

3. Citrix, unfortunately, did not respect their employees' rights to the

security of their own data.

4.   On March 8, 2019 Citrix posted a statement to their blog that they were contacted on March 6, 2019 by the FBI "to advise they had reason to believe that international cyber criminals gained access to the internal Citrix network."[1]

5.   Citrix acknowledged they had been attacked in a letter dated April 29, 2019. Citrix allowed hackers to have intermittent access to their systems from October 13, 2018 to March 8, 2019.[2]

6.   Citrix would not have discovered this breach but for the Federal Bureau of Investigation informing them that they had been attacked.[3]

## THE PARTIES

7.   Plaintiff Kristi Jackson is a resident of Florida. Plaintiff was employed by Defendant from 1998 to 2003. During this time Defendant collected, stored and used Plaintiff's PII. Plaintiff received a letter from Defendant notifying her PII was stolen. Further, Plaintiff has had to have a credit freeze and is paying for credit monitoring currently. Ms. Jackson has also had to file a police report because she is receiving phishing attempts at her current job. The phishing attempt tried to have Plaintiff's human resources department route her direct deposit to a new fraudulent account.

8.   Plaintiff Brandon Sargent is a resident of North Carolina. Plaintiff was employed by Defendant. During his employment Defendant collected, stored and used Plaintiff's PII. As a result of this breach Plaintiff had fraudulent charges to his debit card and was forced to freeze the account. While his account was frozen Plaintiff's vehicle

---

[1] https://www.citrix.com/blogs/2019/03/08/citrix-investigating-unauthorized-access-to-internal-network/
[2] Charlie Osborne, HACKERS LURKED IN CITRIX SYSTEMS FOR SIX MONTHS ZDNET (2019), https://www.zdnet.com/article/hackers-lurked-in-citrix-systems-for-six-months/ (last visited May 17, 2019).
[3] Zack Whittaker, HACKERS WENT UNDETECTED IN CITRIX'S INTERNAL NETWORK FOR SIX MONTHS – TECHCRUNCH TECHCRUNCH (2019), https://techcrunch.com/2019/04/30/citrix-internal-network-breach/ (last visited May 17, 2019).

broke down and he was unable to pay for repairs, until he got his new card a week later. Plaintiff has also received fraudulent phone calls and other identity theft attempts that have caused him to waste countless hours mitigating the damage from this breach.

9. Defendant Citrix Systems Inc., is a Delaware corporation with its principal executive offices located at 851 West Cypress Creek Road, Fort Lauderdale, FL 33309.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class members, a majority of Class Members are citizens of states that are diverse from Citrix, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Citrix has established sufficient contacts in this district such that personal jurisdiction is appropriate. Citrix is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

12. Citrix aims to "power a world where people, organizations and things are securely connected and accessible to make the extraordinary possible."

13. Citrix employs some 8,100 people worldwide and had revenues of 2.82 billion dollars in 2017. They have offices in Florida, California, North Carolina and internationally.

14. Plaintiffs were employees of Citrix and entrusted them with information including but not limited to, their Social Security numbers, bank accounts, names, address, phone number, and email address.

15. Employees have no choice but to give their data to their employers and employers are increasingly getting more data from employees. In a recent survey, employees noted that one of their biggest concerns was how their employers were

securing their personal data.[4]

16.     On March 8, 2019, Citrix disclosed that international cyber criminals had gained access to the internal Citrix network. These criminals had access to Citrix's internal networks from October 13, 2018 to March 8, 2019.

17.     The international cyber criminals were able to gather information on employees and their dependents including, but not limited to, their social security numbers, names, addresses, employment evaluations, tax information, brokerage and banking account numbers, as well as other sensitive data.

18.     The cyber criminals were able to use a technique called "Password Spraying" which involves using a master list of password combinations, to overwhelm a security system. Using this method criminals can basically guess password and username combinations to gain unauthorized access to networks.

19.     Citrix was not aware of that this breach had even occurred until they were informed by the FBI in March of 2018 that they had a cyber security incident. This breach would have gone on undetected and Plaintiffs' PII would have been continually exposed if not for the FBI. Citrix, a security focused company, was not able to detect an intruder in their own networks for over 6 months.

20.     This was not the first time that Citrix has suffered a data breach or intrusion into their networks. In 2016, they suffered a credential stuffing attack, which used a very similar modus operandi to this current hack. Citrix should have learned form this attack and prevented the current attack.[5]

---

[4] Katie Kuehner-Hebert, DO YOUR EMPLOYEES TRUST YOU TO KEEP THEIR DATA SAFE? BenefitsPRO (2018), https://www.benefitspro.com/2018/06/14/do-your-employees-trust-you-to-keep-their-data-saf/?slreturn=20190417124411 (last visited May 17, 2019).

[5] Steve Ragan, LINKEDIN DATA BREACH BLAMED FOR MULTIPLE SECONDARY COMPROMISES CSO ONLINE (2016), https://www.csoonline.com/article/3086942/linkedin-data-breach-blamed-for-multiple-secondary-compromises.html (last visited May 17, 2019).

21. Citrix own product "Citrix Application Delivery Controller Suite" is marketed and sold with the capability to prevent password spraying accounts.

22. Citrix's own internal policies and procedures represented to Plaintiffs that their PII would be protected. Citrix states that they "always protect the privacy of our employees, customers, and partners… handle personal information in a manner that will avoid accidental loss or alteration or unauthorized access."[6] Citrix did not comply with their own internal standards. Instead, they left Plaintiffs' PII unencrypted on a network drive, easily accessible to even the least sophisticated criminals.

23. According to internal sources and Resecurity, a Los Angeles California based security firm, the international cyber criminals are a group called IRIDIUM. They are most likely Iranian and have attacked Citrix numerous times over the last decade. Resecurity claims that IRIDIUM likely had access to Citrix's internal network for at least ten years.[7]

24. In response to this breach Citrix has announced that it will migrate all internal employee files to their secured file sharing system called "Sharefile." Citrix makes and markets this product but failed to use it to protect their own employees. Further, Sharefile has suffered breaches in the past including as recently as December 2018.[8]

25. In addition to compromising existing accounts, the class members' PII can be used by identity thieves to open new financial accounts, incur charges in the name of Class members, take out loans, clone credit and debit cards, and conduct other

---

[6] CITRIX CODE OF BUSINESS CONDUCT 2018, https://www.citrix.com/content/dam/citrix/en_us/documents/about/code-of-business-conduct.pdf (last visited May 17, 2019).

[7] MASSIVE CITRIX DATA BREACH THOUGHT TO BE THE WORK OF IRANIAN HACKERS, CPO Magazine (2019), https://www.cpomagazine.com/cyber-security/massive-citrix-data-breach-thought-to-be-the-work-of-iranian-hackers/ (last visited May 17, 2019).

[8] Brian Krebs, KREBS ON SECURITY A BREACH, OR JUST A FORCED PASSWORD RESET?, https://krebsonsecurity.com/2018/12/a-breach-or-just-a-forced-password-reset/#more-45880 (last visited May 17, 2019).

unauthorized activities.

26. Identity thieves can also use the PII to harm the Class members in a variety of ways, including online harassment or embarrassment, or to commit different types of fraud. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.
>
> The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan*, at p.11 (April 2007), available at *http://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf*.

27. To emphasize the large-scale impact of cybercrime, a study released in February 2018 by McAfee and the Center for Strategic and International Studies that shows worldwide cybercrime costs an estimated $600 billion USD a year. This increased from $500 billion USD in 2014. The new estimate amounts to 0.8 percent of global gross domestic product.[9]

28. The data left unprotected by Citrix here is particularly valuable, and the potential risks to victims are heightened. Many of Citrix's contracts are with the US government and many employees have security clearances. These employees are now

---

[9] "The Cost of Cybercrime," https://internetsociety.org/blog/2018/02/the-cost-of-cybercrime/

at a heightened risk to be approached or blackmailed for information.[10]

29. Plaintiffs and Class members are at risk for identity theft in a myriad of forms, potentially for the remainder of their lives.

30. The types of information compromised in this data breach are highly valuable to identity thieves. In addition to credit and debit card information, names, email addresses, recovery email accounts, telephone numbers, birthdates, passwords and security question answers can all be used to gain access to a variety of existing accounts and websites.

31. Identity thieves can also use the PII to harm Plaintiffs and Class members through embarrassment, blackmail, or harassment in person or online, as well as to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.

32. In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

33. In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their

---

[10] Ellen Nakashima, HACKS OF OPM DATABASES COMPROMISED 22.1 MILLION PEOPLE, FEDERAL AUTHORITIES SAY The Washington Post (2015), https://www.washingtonpost.com/news/federal-eye/wp/2015/07/09/hack-of-security-clearance-system-affected-21-5-million-people-federal-authorities-say/?noredirect=on&utm_term=.8b7221d268b9 (last visited May 17, 2019).

reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

34. The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the PII they have obtained. Indeed, to protect themselves, Class members will need to remain vigilant against unauthorized data use for years and decades to come.

35. Once stolen, PII can be used in several different ways. One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and PII. Websites appear and disappear quickly, making it a very dynamic environment.

36. Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

37. Further, an individual's PII has market value and there are markets for that PII. For example, data collection companies, credit reporting companies, and companies that engage in targeted advertising are all willing to pay money to obtain, directly or indirectly, PII from individuals. Indeed, many email and social media service providers require their users to consent to having their information scanned and recorded for the purpose of selling that information to advertisers. But, the theft of that PII and unauthorized sale of it on the "dark web" diminishes its legitimate market value.

38. Citrix employees whose PII has been unlawfully accessed or stolen can—

and should—sign up for credit protection services immediately. Such services cost money, however.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs brings this lawsuit on behalf of themselves and as a class action on behalf of a proposed national class, defined as:

> All persons in the United States who are current and former employees or who are a dependents or beneficiaries of somebody who was employed by Citrix Systems and whose personal information was accessed, compromised, or stolen from Citrix in the data breach that was announced on March 8, 2019.

40. Excluded from the Class are Defendants and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest; Defendant's officers, agents, and employees; attorneys for Plaintiffs and the Class; the judicial officer to whom this action is assigned and any member of the Court's staff and immediate families; as well as claims for personal injury, wrongful death, and emotional distress.

41. **Numerosity:** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably believes that Class members number thousands of people. As such, class members are so numerous that joinder of all members is impractical. The names and addresses of class members are identifiable through documents maintained by Citrix.

42. **Commonality** and **Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

    a. Whether Defendant engaged in the wrongful conduct alleged herein;

    b. Whether Defendant's inadequate data security measures were a cause of the data breach;

    c. Whether Defendant owed a legal duty to Plaintiff and the other Class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

    d. Whether Defendant negligently or recklessly breached legal duties owed to Plaintiff and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

    e. Whether Plaintiffs and the Class are at an increased risk for identity theft because of the data breach;

    f. Whether Plaintiffs' and the Class have suffered a decrease in the value of their PII because of the data breach;

    g. Whether Plaintiffs and the other class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

    h. Whether Plaintiffs and the other class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

43. These issues not only predominate, but they are also matters appropriate for issue certification under Rule 23(c)(4).

44. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

45. **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Citrix. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and there are no defenses that are unique to Plaintiffs.

46. **Adequacy of Representation:** Plaintiffs are an adequate representative of

the class because his interests do not conflict with the interests of the other class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel

47. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Negligence

### (On behalf of the Nationwide Class)

48. Plaintiffs repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 47, as though fully stated herein.

49. Citrix owed a duty to Plaintiffs and the other Class members to exercise reasonable care in safeguarding and protecting their PII that was in its possession from being compromised, lost, stolen, misused, or disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiffs' and the other Class members' PII was

adequately secured and protected. Defendant further had a duty to implement processes that would detect a breach of their security system in a timely manner.

50. Citrix also had a duty to timely disclose to Plaintiffs and the other Class members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiffs and the other Class members could take appropriate measures to cancel or change usernames, PIN numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts and take any and all other appropriate precautions.

51. By being entrusted by Plaintiffs and the Class to safeguard their PII, Citrix had a special relationship with Plaintiffs and the Class. Plaintiffs and the Class agreed to provide their PII with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiffs and the Class of any breaches or other security concerns that might call for action by Plaintiffs and the Class. But, Defendant did not. Defendant not only knew their data security was inadequate, they also knew they didn't even have the tools to detect and document intrusions or exfiltration of PII. Citrix is morally culpable, given its repeated security breaches, wholly inadequate safeguards, and refusal to notify Plaintiffs and the Class of breaches or security vulnerabilities.

52. Citrix breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiffs' and the other Class members' PII stored by Defendant; and failing to recognize in a timely manner the breach.

53. Citrix breached its duty to timely disclose that Plaintiffs' and the other Class members' PII had been, or was reasonably believed to have been, stolen or compromised.

54. Citrix's failure to comply with industry regulations and the delay between the first vulnerability date and the date Citrix informed employees of the data breach further evidence Citrix's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII.

55. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs' and the other Class members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

56. The injury and harm suffered by Plaintiffs and the other Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII. Defendant knew or should have known that their systems and technologies for processing and securing Plaintiffs' and the other Class members' PII had security vulnerabilities.

57. As a result of Defendant's negligence, Plaintiffs' and the other Class members incurred economic damages, including expenses for credit monitoring, fraudulent charges on credit card or bank accounts, loss of use and value of their debit and/or credit cards, and other identity theft-related damages.

## SECOND CAUSE OF ACTION

### Misrepresentation

### (On behalf of the nationwide class)

58. Plaintiffs repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

59. As outlined above, Citrix's Code of Business conduct and advertising contained numerous omissions and misrepresentations, regarding the supposed secure nature of their data security for Plaintiffs' PII. Such omissions and representations were false because Citrix failed to disclose that they did not use reasonable, industry-standard means, to safeguard against hacking and theft of Plaintiffs' PII.

60. Such representations and omissions were material to Plaintiffs, who reasonably relied on the representations and omissions. Plaintiffs and other members of the Class would not have agreed to turn over their PII, had they known the truth: that Citrix's internal services were not as secure as represented or secure by any standard.

61. Citrix intended that Plaintiffs and other Class members rely on their security representations and omissions, as they knew no potential employees would submit PII or entrust a business to unreasonable security risks. In reliance on these representations and omissions, Plaintiffs and the Class entered into employment relationships with Citrix, and provided their PII, which was ancillary to, but not the subject of, the employment relationship.

62. Citrix experienced a major data breach prior to the current Breach (and after), had been warned that their encryption was outdated, and their security procedures were not enough. The earlier data breach used the same technique as this breach and as such Defendants knew their security measures were inadequate. Defendants were negligent in their representations and omissions.

63. As a direct and proximate result of Citrix's wrongful actions and inactions, Plaintiff and Class members have been damaged by having an increased risk of identity theft, including, but not limited to out of pocket expenses for credit monitoring.

64. As a direct and proximate result of Citrix's negligent, and/or willful, actions and inactions, Plaintiffs and Class members experienced damage to the PII supplied to Defendants for purposes of employment by Citrix, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of Citrix's data breach on their lives.

65. As a direct and proximate result of Citrix's negligent, and/or willful, actions and inactions, Plaintiffs and other Class members experienced damage to

property that was not the subject of the employment agreement with Citrix, including but not limited to damage to their credit, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Citrix data breach on their lives.

### THIRD CAUSE OF ACTION

### Breach of Contract

### (On behalf of the nationwide class)

66. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

67. Citrix's Code of Business Conduct forms a binding contract between Citrix and their employees when they gave their PII to Citrix at the start of their employment. The Code of Business Conduct states they "always protect the privacy of our employees, customers, and partners…handle personal information in a manner that will avoid accidental loss or alteration or unauthorized access."

68. Citrix breached these provisions of the contracts in that they did not have any measures to stop "accidental loss or alteration or unauthorized access" to protect Plaintiff and Class members' "Personal Information," including, but not limited to, Section 5(a) of the FTC Act, and did not limit access to that information to the specified individuals or entities. Citrix violated their commitment to maintain the confidentiality and security of the PII of Plaintiffs and the class members and failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security.

69. The data breach reported on March 8, 2019 is a direct and legal cause of the injuries and damages suffered by Plaintiffs and the Class members.

70. Plaintiffs and the other Class members were harmed as the result of Citrix's breach of contract terms outlined above, resulting in the data breach, because

their PII and financial information were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII and financial information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiffs and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contracts

### (On Behalf of the Nationwide Class)

71. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

72. To the extent that Citrix's Code of Business Conduct did not form express contracts, the creation of the employment relationship created implied contracts between Defendants and the class members, the terms of which were set forth by the relevant Code of Business Conduct and other policies.

73. Defendants breached such implied contracts by failing to adhere to the terms of the applicable Code of Business Conduct, Defendants violated their commitment to maintain the confidentiality and security of the PII of Plaintiffs and the Class and failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security.

74. Plaintiffs and the Class members were harmed as the result of Defendants' breach of the implied contracts because their PII and financial information were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII and financial information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiffs and the

Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures. The Class members are further damaged as their PII remains in Defendants' possession, without adequate protection, and is also in the hands of those who obtained it without their consent.

75. This breach of the implied contracts was a direct and legal cause of the injuries and damages to Plaintiffs and members of the Class as described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, respectfully requests that this Court enter an Order:

(1) Certifying the proposed Class, and appointing Plaintiff as Class Representative;

(2) Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(3) Enjoining Defendant from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

(4) Awarding Plaintiff and Class members actual, compensatory, and consequential damages;

(5) Awarding Plaintiff and Class members restitution and disgorgement;

(6) Awarding Plaintiff and Class members pre-judgment and post-judgment interest;

(7) Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, hereby demands a trial by jury as to all matters so triable.

Dated:  May 30, 2019                                **CASEY GERRY SCHENK**
                                                                 **FRANCAVILLA BLATT & PENFIELD, LLP**

                                        By:   /s/ David S. Casey, Jr.
                                                  DAVID S. CASEY, JR. (Pro hac vice to be filed)
                                                  *dcasey@cglaw.com*

                                                  /s/Gayle M. Blatt
                                                  GAYLE M BLATT (Pro hac vice to be filed)
                                                  gmb@cglaw.com
                                                  Attorneys for Plaintiff

                                                  **RUSSOMANNO & BORRELLO, P.A.**
                                                  *Attorneys for Plaintiffs*
                                                  Museum Tower – Penthouse 2800
                                                  150 West Flagler Street
                                                  Miami, Florida 33130
                                                  Telephone: (305) 373-2101
                                                  Facsimile: (305) 373-2103

                                                  By:/s/ Herman J. Russomanno
                                                      Herman J. Russomanno
                                                      Fla. Bar No. 240346
                                                      hrussomanno@russomanno.com
                                                      Robert J. Borrello
                                                      Fla Bar No 764485
                                                      rborrello@russomanno.com
                                                      Herman J. Russomanno III
                                                      Fla. Bar No. 21249
                                                      herman2@russomanno.com