**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-cv-61350-ALTMAN/HUNT**

*In re: Citrix Data Breach Litigation*

**PLAINTIFFS' UNOPPOSED AND AMENDED MOTION TO DIRECT CLASS NOTICE
AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW**

i

## TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................ iv

I.      INTRODUCTION ................................................................................................... 1

II.     SUMMARY OF LITIGATION ............................................................................... 3

        A.      Procedural History ....................................................................................... 3

        B.      Information About the Settlement ................................................................ 4

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ......................................... 5

        A.      The Settlement Class.................................................................................... 5

        B.      The Settlement Benefits ............................................................................... 6

                1.      Reimbursement of Out-of-Pocket Losses ...................................... 6

                2.      Reimbursement for Attested Time.................................................. 7

                3.      Identity Restoration Services .......................................................... 7

                4.      Minor Monitoring Services............................................................. 8

                5.      Three-Bureau Credit Monitoring Services...................................... 8

                6.      Alternative Cash Payments ............................................................. 9

        C.      Contractual Business Practice Commitments ............................................ 11

        D.      Proposed Notice Program .......................................................................... 11

        E.      Attorneys' Fees, Costs, and Expenses ...................................................... 12

        F.      Release of Claims ...................................................................................... 13

IV.     ARGUMENT ........................................................................................................ 13

        A.      Legal Standards.......................................................................................... 13

        B.      The Proposed Settlement is Fair, Reasonable, and Adequate.................... 14

                1.      The Class was Adequately Represented ....................................... 14

                2.      The Proposed Settlement was Negotiated at Arm's-Length.................... 15

3.      Plaintiffs Have Sufficient Information to Weigh
        the Benefits of Settlement ........................................................... 15

4.      The Settlement Relief is Fair, Reasonable, and Adequate ........................ 17

        a.      The Risks, Costs, and Delay of Continued Litigation ................. 18

        b.      The Method of Distributing Relief is Effective ........................... 20

        c.      The Terms Relating to Attorneys' Fees are Reasonable .............. 20

5.      Agreements Required to be Identified by Rule 23(e)(3) ......................... 21

6.      Class Members are Treated Equitably Relative to Each Other ................ 22

C.      Certification of the Settlement Class is Appropriate ............................................. 22

1.      The Settlement Class Meets the Requirements of
        Rules 23(a) and (b)(3) ................................................................... 23

        a.      Numerosity ................................................................................... 23

        b.      Commonality ................................................................................ 23

        c.      Typicality ..................................................................................... 24

        d.      Adequacy ...................................................................................... 25

        e.      Predominance ............................................................................... 25

        f.      Superiority .................................................................................... 27

D.      The Proposed Class Notice Satisfies Rule 23 ...................................................... 28

E.      The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines . 29

V.      CONCLUSION ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Agan v. Katzman & Korr*, *P.A.*,
  222 F.R.D. 692 (S.D. Fla. 2004) ........................................................................... 27

*Amchem Products*, *Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................... 22, 25, 26, 27

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir.1984) ............................................................................... 14

*Cooper v. S. Co.*,
  390 F.3d 695 (11th Cir. 2004) .............................................................................. 24

*Data Sec. Breach Litig.*,
  851 F.Supp.2d 1040 (S.D. Tex. 2012) ............................................................ 24, 26

*Fabricant v. Sears Roebuck*,
  202 F.R.D. 310 (S.D. Fla. 2001) .......................................................................... 22

*Fresco v. Auto Data Direct*, *Inc.*,
  2007 WL 2330895 (S.D. Fla. May 14, 2007) ....................................................... 13

*Gonzalez v. TCR Sports Broad. Holding*, *LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) .................................................. 16, 21

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................................................... 19

*Hapka v. CareCentrix*, *Inc.*,
  2018 WL 1871449 (D. Kan. Feb. 15, 2018) ......................................................... 26

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) ...................................................................... 24, 25

*Hutton v. Nat'l Bd. of Exam'rs in Optometry*, *Inc.*,
  2019 WL 3183651 (D. Md. July 15, 2019) ........................................................... 18

*Ibrahim v. Acosta*,
  326 F.R.D. 696 (S.D. Fla. 2018) .......................................................................... 14

*In re Anthem*, *Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ............................................................ 17, 18, 26

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) ............................................................................ 15, 23

*In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .......................................................... 24

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................................................. 17

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ..................................................................................... 19

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   2019 WL 3410382 (D. Or. July 29, 2019) ................................................................. 17

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......................................................... 18

*In re Target Corp. Customer Data Security Breach Litig.*,
   2015 WL 7253765 (D. Minn. Nov. 17, 2015) ................................................. 19, 20, 21

*In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................................................ 26

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ............................................................................. 14, 18

*Kennedy v. Tallant*,
   710 F.2d 711 (11th Cir. 1983) ................................................................................... 24

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ................................................................................. 26

*Kornberg v. Carnival Cruise Lines*, *Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ................................................................................. 24

*Leszczynski v. Allianz Ins.*,
   176 F.R.D. 659 (S.D. Fla. 1997) ................................................................................ 23

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................................... 16, 22

*Manno v. Healthcare Revenue Recovery Grp.*, *LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013) ................................................................................ 23

*Nelson v. Mead Johnson & Johnson Co.*,
  484 F. App'x 429 (11th Cir. 2012) ........................................................................ 18

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................... 15

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................ 16

*Sikes v. Teleline, Inc.*,
  281 F.3d 1350 (11th Cir. 2002) .............................................................................. 27

*Turner v. Gen. Elec. Co.*,
  2006 WL 2620275 (M.D. Fla. Sept. 13, 2006) ...................................................... 14

*Walco Investments, Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996) ............................................................................ 23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................................... 25

*Williams v. Mohawk Industries, Inc.*,
  568 F.3d 1350 (11th Cir. 2009) .............................................................................. 23

*Wolff v. Cash 4 Titles*,
  2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ....................................................... 21

**Statutes**

Fla. Stat. §§ 501.201 ..................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

Federal Rule of Evidence 408 ....................................................................................... 4

**Other Authorities**

1 Newberg on Class Actions § 3:21 ............................................................................ 25

4 Newberg on Class Actions § 13:10 (5th ed. 2015) ................................................. 13

Attorneys' Fees in Class Actions: 2009-2013,
  92 N.Y.U. LAW REV. 937 (2017) ........................................................................... 21

Plaintiffs Lee Milligan (on behalf of himself and his minor son), Lindsey Howard, Michelle Ramus, Charles Ramus, Brandon Sargent, and Natalie Young ("Plaintiffs"), respectfully move for an order directing class notice and granting preliminary approval a proposed class action settlement with Defendant Citrix Systems, Inc. ("Citrix" or "Defendant"), the terms of which are set forth in the "Amended Settlement Agreement and Release" ("Settlement Agreement" or "SA"), attached hereto as **Exhibit 1**.

## I.    INTRODUCTION[1]

On March 8, 2019, Citrix, a global technology company that provides cloud computing software and remote access products, informed Plaintiffs and class members that hackers had gained access to Citrix's internal network and exfiltrated information pertaining to 24,316 current and former employees, their dependents or beneficiaries, or other third parties (the "Data Breach"). The information stolen in the Data Breach included names, Social Security numbers or other tax identification numbers, financial account numbers, passport numbers, limited health claims information, or other personal information ("Personal Identifying Information" or "PII"). The hackers accessed Citrix's internal network through what is known as "password spraying," a technique used by hackers to exploit weak passwords. The Federal Bureau of Investigation contacted Citrix on March 6, 2019, advising that it had reason to believe Iranian cyber criminals had gained access to the internal Citrix network and exfiltrated terabytes of data.

Citrix confirmed that data was exfiltrated for about five months from October 13, 2018 through March 8, 2019. Following notification of the Data Breach, three class action cases were filed against Citrix by current and former employees seeking damages, statutory penalties, and injunctive relief on behalf of themselves and others who were affected.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement.

Following significant investigation and lengthy arm's-length settlement negotiations, the parties agreed on a classwide settlement to resolve these cases (the "Settlement"). On June 2, 2020, Plaintiffs filed an unopposed motion to direct class notice and grant preliminary approval of class action settlement. (Doc. 46). While that motion was pending, the U.S. Court of Appeals for the Eleventh Circuit issued an opinion in *Johnson v. NPAS Solutions, LLC*, 2020 WL5553312 (11th Cir. Sept. 17, 2020) which provided additional guidance regarding the timing for filing an attorneys' fee motion pursuant to Rule 23(h) and held that incentive or service awards in class action cases are foreclosed by Supreme Court precedent. *See id*. at *4, 9. Citing *Johnson*, this Court issued an order on October 1, 2020 denying Plaintiffs' motion for preliminary approval based on the timing of the attorneys' fee motion and the Settlement Agreement's contemplation of service awards for the class representatives. (Doc. 51). The Court directed that Plaintiffs may file an amended motion on or before October 30, 2020.

In light of the guidance from the Eleventh Circuit and this Court, the parties have amended the Settlement Agreement as follows: (1) the Settlement Agreement no longer contemplates Plaintiffs' request for service awards for the class representatives; (2) Counsel's motion for attorneys' fees and expenses will be filed *before* notice is issued; and (3) the claim form will be amended to explicitly state that Counsel are seeking attorneys' fees in the amount of $750,000 equaling 32.9% of the Settlement Fund and that Counsel's fee motion (which will have already been filed) can be accessed at the Settlement Website. The pertinent terms of the Settlement, summarized below, will remain the same in all other respects:

Citrix will establish a non-reversionary cash Settlement Fund of $2,275,000.00 that will be used to pay for (1) reimbursement of class members' documented out-of-pocket losses fairly traceable to the Data Breach, up to $15,000 per individual; (2) reimbursement of class members'

time spent remedying issues related to the Data Breach, up to five hours at $25 per hour (up to $125 per individual); (3) access to identity restoration services for all class members, including professional fraud resolution assistance to help with identity recovery and restoration in case the class member experiences identity theft or fraud in the future, regardless of whether they make a claim under the Settlement; (4) an automatic five years of minor monitoring services for all minors affected in the Data Breach; and (5) five years of three-bureau credit monitoring through Experian or an alternative cash payment. As part of the Settlement, Citrix has also agreed to maintain contractual business practice commitments relating to its data security.

Pursuant to Rule 23(e)(1)(B), an order directing notice to the class is justified where the Court concludes it will likely be able to (1) approve the Settlement as fair, reasonable, and adequate, and (2) certify the class for purposes of judgment on the Settlement. Accordingly, Plaintiffs request that the Court permit the issuance of notice to the class of the proposed settlement, approve the form and manner of notice to the class, appoint Angeion Group to administer the class notice plan and to fulfill the duties of the Settlement Administrator as outlined in the Agreement, and schedule a final approval hearing to determine whether the Settlement should be finally approved.

## II.    SUMMARY OF LITIGATION

### A.    Procedural History

After first announcing the Data Breach on March 18, 2019, three class action cases were filed against Citrix within 30 days of each other. On July 15, 2019, this Court consolidated the three actions. On July 29, 2019, Plaintiffs, on behalf of themselves and others similarly situated, filed the Consolidated Class Action Complaint. (Doc. 18). The Complaint sought monetary, injunctive, and declaratory relief based on eight causes of action for: (1) negligence; (2) negligence per se; (3) violations of the Florida Unfair and Deceptive Trade Practices Act, Fla.

Stat. §§ 501.201, *et seq.*; (4) breach of contract; (5) breach of implied contract; (6) breach of fiduciary duty; (7) breach of confidence; and (8) declaratory judgment. On August 22, 2019, Citrix answered and asserted affirmative defenses. (Doc. 23).

On September 26, 2019, the Court issued setting a trial and pre-trial schedule and referred the matter to mediation. (Doc. 28).  On November 5, 2019, the Court appointed John Yanchunis of Morgan & Morgan; J. Austin Moore of Stueve Siegel Hanson LLP; Gayle M. Blatt of Casey, Gerry, Schenk, Francavilla, Blatt & Penfield, LLP; and Rosemary M. Rivas of Levi & Korsinsky, LLP as Interim Class Counsel pursuant to Rule 23(g)(3) and Herman J. Russomanno III of Russomanno & Borrello, P.A. as Liaison Counsel (collectively "Class Counsel")  (Doc. 35).

Following the appointment of Class Counsel, the parties exchanged initial disclosures pursuant to Rule 26(a)(1) and Plaintiffs served 47 requests for production of documents. *See* Declaration of John A. Yanchunis, attached as **Exhibit 2** ("JAY Decl."), ¶ 3. The parties thereafter began engaging in preliminary and then more formal settlement negotiations. This included an exchange of information Plaintiffs required to engage in settlement negotiations and the exchange of competing term sheets.  *Id.*, ¶ 4.

### B.    Information About the Settlement

To help facilitate settlement negotiations, the parties agreed on and retained the Honorable Jay C. Gandhi (Ret.) of JAMS ADR, a retired United States Magistrate Judge and highly experienced mediator, to conduct a mediation on March 26, 2020. JAY Decl., ¶ 5. As a condition of mediation, Class Counsel sought pertinent information from Citrix regarding the Data Breach, including the technical aspects of the breach, the company's discovery of the breach, the duration of the breach, Citrix's retention of third-party forensic investigators, and a detailed explanation of the remedial measures taken by Citrix following the breach. Citrix agreed to provide this information pursuant to Federal Rule of Evidence 408. *Id.*, ¶ 6

In advance of the mediation, the parties briefed their respective positions on the facts, claims, defenses, and assessments of the continued risks of litigation before Judge Gandhi. JAY *Id.*, ¶ 7. On March 26, 2020, the parties participated in a full-day mediation session with Judge Gandhi that included attorneys and representatives for both parties. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Following nearly 10 hours of negotiations, the parties were able to reach an agreement on the substantive terms of the Settlement and execute a binding term sheet. *Id.*, ¶ 8. As a condition of Settlement, Citrix produced certain documents responsive to Plaintiffs' first requests for production of documents and provided a declaration confirming the size and scope of the Settlement Class. *Id.*, ¶ 9.

Based on Class Counsel's independent investigation of the relevant facts and applicable law, experience with other data breach cases, and the information provided by Citrix, Class Counsel has determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *See id.*, ¶¶ 28-34. Accordingly, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto. *Id.*, ¶ 9.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The proposed Settlement Class is defined as the 24,316 individuals identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Citrix that their personal information was or may have been compromised in the data breach initially disclosed by Citrix in or about March 2019.[2] SA, ¶ 36.

---

[2] Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and

### B.      The Settlement Benefits

Citrix has agreed to fund a non-reversionary cash settlement fund in the amount of $2,275,000.00. SA, ¶¶ 43, 44; JAY Decl. ¶ 10. The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

### 1.      Reimbursement of Out-of-Pocket Losses

The first component of the Settlement is reimbursement of out-of-pocket losses and unreimbursed charges fairly traceable to the Data Breach up to $15,000 per individual ("Out-of-Pocket Losses"). *See* SA, ¶ 49. The "fairly traceable" standard will allow class members to be compensated for a broad range of harm likely to flow from the Data Breach. Examples of Out-of-Pocket Losses that are eligible for reimbursement through the Settlement include:

- Unreimbursed costs associated with fraud or identity theft;

- Professional fees including attorneys' fees, accountants' fees and fees for credit repair services;

- Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Costs of credit monitoring or other identity theft protection services incurred on or after October 13, 2018;

- Costs associated with freezing or unfreezing credit with any credit reporting agency.

*See* Claim Form, Exhibit 2 to SA.

The documentation necessary to establish Out-of-Pocket Losses is not overly burdensome and can consist of documents such as receipts from third parties, highlighted account statements, phone bills, gas receipts, and postage receipts, among other relevant documentation. *See* SA, ¶ 50; JAY Decl., ¶ 11. For Settlement Class Members with minors affected in the Data Breach, a legal

---

their current or former officers, directors, and employees; (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA, ¶ 36.

guardian can submit a separate claim for each minor affected. SA, ¶ 49; JAY Decl., ¶ 11. If the claim is rejected for any reason, there is also a consumer-friendly process whereby claimants will have the opportunity to cure any deficiencies in their submission if the Settlement Administrator determines a claim for Out-of-Pocket Losses is deficient in whole or part. SA, ¶ 53; JAY Decl., ¶ 11.

### 2.     Reimbursement for Attested Time

The second component of the Settlement is reimbursement for time spent remedying issues related to the Data Breach ("Attested Time"). Settlement Class Members can make a claim for reimbursement for up to five hours at $25 per hour. *See* SA, ¶ 51. This is an important benefit as Settlement Class Members can receive payment for having to take time out of their busy lives to address issues stemming from the Data Breach. JAY Decl., ¶ 12. For Settlement Class Members with minors affected in the Data Breach, a legal guardian can submit a separate claim for each minor affected. SA, ¶ 51; JAY Decl., ¶ 12. Likewise, this claims procedure is subject to the consumer-friendly process, providing claimants with the opportunity to correct any deficiencies in their submission. SA, ¶ 53.

### 3.     Identity Restoration Services

All Settlement Class Members will be entitled to access identity restoration services offered through Experian for a period of five years, regardless of whether they submit a claim under the Settlement ("Identity Restoration Services"). SA, ¶ 56; JAY Decl., ¶ 13. This coverage provides class members with access to fraud resolution specialists who can assist with important tasks such as placing fraud alerts with the credit bureaus, disputing inaccurate information on credit reports, scheduling calls with creditors and other service providers, and working with law enforcement and government agencies to dispute fraudulent information. This Settlement benefit

allows even those class members who do not submit a claim under the Settlement to have access to help in the case they experience fraud or identity theft in the future. JAY Decl., ¶ 13.

### 4.      Minor Monitoring Services

As part of the Settlement, a parent or legal guardian of a Settlement Class Member who is a minor at the time the settlement is final may enroll the minor in five (5) years of Experian's Minor Plus Monitoring Services ("Minor Monitoring Services"). SA, ¶ 57. These services will be provided automatically to approximately 2,400 qualifying minors without the need to file a claim under the Settlement. JAY Decl., ¶ 14. Minor Monitoring Services include Social Security Number tracing to determine whether someone has applied for credit in the minor's name along with alerts of all names, aliases and addresses that become associated with the minor's credit file; internet surveillance that searches the web, chat rooms, and bulletin boards to identify trading or selling of the minor's personal information on the Dark Web; identity restoration and fraud resolution services; and $1,000,000 in identity theft insurance for material damages that may occur against a minor whose credit file is misused. *Id*.

### 5.      Three-Bureau Credit Monitoring Services

Another primary benefit in this Settlement is five years of free, three-bureau credit monitoring available to every participating settlement class member who elects to enroll ("Credit Monitoring Services"). SA, ¶ 54. Credit monitoring is a service that monitors an individual's credit reports and alerts the individual when any change is made that could signal fraudulent activity. JAY Decl., ¶ 15. Credit changes can include new credit card or loan applications, new credit inquiries, existing account changes, and new public records or address changes, among others. *Id*. Credit monitoring gives the individual the opportunity to confirm the accuracy of a credit change in real time and, if necessary, address the issue before fraud occurs or expands. *Id*.

There are three major credit reporting agencies in the U.S., Experian, Equifax and TransUnion. While many credit monitoring services only monitor an individual's credit activity with one agency, the more robust services monitor activity from all three major credit reporting agencies. This is important because each agency operates independently from one another, and the information each receives from creditors can be different. *Id.*, ¶ 16. As such, utilizing a credit monitoring service that monitors an individual's reports with all three agencies ensures that there are no major gaps in coverage. Accordingly, the parties have made available to all class members a robust monitoring service through Experian IdentityWorks, which retails for approximately $19.99 month. *Id.* The Credit Monitoring Services are available to all class members regardless of whether they submit a claim for Out-of-Pocket Losses or Attested Time. SA, ¶ 54. The Credit Monitoring Services provide significant value to the class. While the parties were able to secure discounted pricing based on the size of the class, the actual market value of this settlement benefit can fairly be estimated at approximately $1,200 per class member ($19.99 per class member for 60 months), or over $26 million to the nearly 21,900 non-minor class members who are eligible to enroll. JAY Decl., ¶ 17.

### 6. Alternative Cash Payments

In lieu of Credit Monitoring Services, class members may elect to receive a cash payment in an amount equal to a *pro rata* distribution of the remaining settlement funds after payment is allocated for Identity Restoration Services, Minor Monitoring Services, Credit Monitoring Services, payments for Out-of-Pocket Losses, Attested Time, notice and administration costs, and attorneys' fees and expenses. Class Members are subject to an individual aggregate cap of $15,000 for total payments under the Settlement. SA, ¶ 65; JAY Decl., ¶ 18.

Given Class Counsel's experience studying claims rates and benefits selection in other data breach settlements, Class Counsel is confident the Settlement Fund will be sufficient to pay

out all claims for Out-of-Pocket Losses and Attested Time with funds remaining to make meaningful payments for Alternative Cash Payments. JAY Decl., ¶ 19. When a victim incurs out-of-pocket expenses relating to a data breach, it is typically associated with seeking advice about how to address the breach (*e.g.*, paying for professional services), paying incidental costs associated with identity theft or fraud (*e.g.*, overdraft fees or costs for sending documents by certified mail), or taking mitigative measures like paying for credit monitoring or credit restoration services. *Id.* As such, the out-of-pocket expenses associated with a data breach are generally relatively low, and rarely exceed several hundred dollars for any individual class member with losses. *Id.* When victims spend more than this amount, it is typically associated with paying for professional services such as accountant or attorneys' fees. Thus, while there are situations where a class member can incur thousands of dollars in losses, which is accounted for in this Settlement, those instances are typically outliers. *Id.*

The non-reversionary structure of the Settlement will ensure that all Settlement funds will be used to directly benefit the Settlement Class. *Id.*, ¶ 20. If there are funds remaining as the result of uncashed checks, such funds will be distributed as required by state law or to a non-profit organization approved by the Court following distribution of settlement payments. SA, ¶ 61; JAY Decl., ¶ 20. In the unlikely event that the aggregate amount of payments for reimbursement of Out-Of-Pocket Losses and Attested Time exceeds the Net Settlement Fund, then claims for Out-Of-Pocket Losses will be paid first, with payments for Attested Time reduced on a *pro rata* basis and Alternative Cash Payments withheld.[3] SA, ¶ 67.

---

[3] Similarly, in the unlikely event that 7,500 or more class members elect to enroll in Credit Monitoring Services under the Settlement, the number of years provided will be reduced to three years to ensure there are sufficient funds to pay other settlement benefits. SA, ¶ 67.

### C. Contractual Business Practice Commitments

In addition to the monetary compensation provided to class members by the Settlement, Citrix has agreed to adopt and implement certain business practice commitments and remedial measures for at least three years after the Effective Date, which are subject to Court enforcement. SA, ¶¶ 68-70. These commitments will be paid for by Citrix separate and apart from the Settlement Fund and include the following categories: (1) enhanced cybersecurity training and awareness program; (2) enhanced data security policies; (3) enhanced security measures; (4) further restricting access to personal information; and (5) enhanced monitoring and response capability. SA, ¶ 68; JAY Decl., ¶ 21. Citrix has provided to Class Counsel a declaration setting forth the specifics of its implementation of these measures which Class Counsel have committed to keep confidential. JAY Decl., ¶ 21.

### D. Proposed Notice Program

The parties propose that Angeion Group be appointed as the Settlement Administrator tasked with providing notice and processing claims. Angeion is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which Plaintiffs and Angeion believe is an effective program. *See* Declaration of Teri Thompson of Angeion Group, LLC In Support of Class Notice and Settlement Administration ("Angeion Decl."), ¶¶ 1-7, attached as **Exhibit 3**; JAY Decl., ¶ 24.

Subject to Court approval, this Notice Program involves direct mail notice to all 24,316 Settlement class members, along with an additional e-mail notice to those current Citrix employees whose personal email addresses are known. Angeion Decl., ¶¶ 9, 12; JAY Decl., ¶ 24. The approximate cost of notice and administration is $64,927, which will be paid from the Settlement Fund. Angeion Decl., ¶ 21; JAY Decl., ¶ 24; SA, ¶ 48. Class Counsel has also factored in the costs of providing reminder notice if it is deemed necessary. JAY Decl., ¶ 24.

11

Angeion will also establish a Settlement Website in the form agreed to by the parties and the Court. Angeion Decl., ¶¶ 16, 17. In addition to the notices, the website will include information about the Settlement, related case documents, and the Settlement Agreement. Class members can submit claims electronically on the Settlement Website or by mail. SA, ¶ 64; JAY Decl., ¶ 25. The documentation necessary to establish Out-of-Pocket Losses can be uploaded through the Settlement Website or mailed in paper form. JAY Decl., ¶ 25. The Claim Form provides examples of documentation that can establish various types of losses. *See* Claim Form, Exhibit 2 to SA. Class members who elect to enroll in Credit Monitoring Services will receive an activation code by mail or e-mail within 30 days of the Effective Date. SA, ¶ 54.

The proposed class notice meets the standards of Rule 23(c)(2)(B). *See* Class Notice, Exhibit 1 to SA. The notice uses plain English in an easy-to-read format that concisely explains to class members the nature of the case and their options under the Settlement. It includes information such as the case caption, a description of the Class, a description of the claims and the history of the litigation, a description of the Settlement and the claims being released, the names of Class Counsel, a statement of the amount of attorneys' fees that will be sought by Class Counsel and provide a link to the Settlement Website where class members can access the (already-filed) fee brief, a description of the procedures and deadlines for requesting exclusion and objecting to the Settlement, the URL to access the Settlement Website containing relevant case documents, and the manner in which to obtain further information. *Id.*; JAY Decl., ¶ 26.

### E.     Attorneys' Fees, Costs, and Expenses

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses approved by the Court. Class Counsel will move for an attorneys' fee award of $750,000 equaling 32.9% of the settlement fund within 10 days of an order granting preliminary approval and for reimbursement of costs and expenses in an amount not to exceed $150,000 that will be set forth

in the fee motion. SA, ¶ 89; JAY Decl., ¶ 22. The fee motion will be posted on the Settlement

Website so that when Class Members receive notice, they may review the fee motion if they wish.

### F.      Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will release

any legal claims that may arise from or relate to the facts alleged in the Consolidated Complaint,

as specified in Section XIII of the Settlement Agreement. SA, ¶¶ 85-88; JAY Decl., ¶ 23.

## IV.     ARGUMENT

### A.      Legal Standards

Approval of a proposed settlement is a two-step process. First, the court decides whether

the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct,*

*Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007), to decide "whether to direct notice …

to the class, invite the class's reaction, and schedule a final fairness hearing." 4 Newberg on Class

Actions § 13:10 (5th ed. 2015). Second, at the final approval hearing, the court decides if the

settlement is fair, reasonable, and adequate. *Id*.

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the

class of a class action settlement upon determining that notice is justified because the Court

concludes it is "more likely than not" to finally approve the settlement and certify a settlement

class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a

settlement, a court should consider whether (1) the class was adequately represented; (2) the

settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs,

risks, and delay of trial and appeal; how the relief will be distributed; the terms governing

attorneys' fees; and any side agreements; and (4) whether class members are treated equitably

relative to each other. *Id*.

In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit may also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*. (citations omitted).

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

**B.      The Proposed Settlement is Fair, Reasonable, and Adequate**

**1.      The Class was Adequately Represented**

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted). Here, the class representatives have the same interests as other class members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them

as Interim Class Counsel pursuant to Rule 23(g), and the record shows Class Counsel worked diligently to bring this case to resolution. *See* JAY Decl., ¶¶ 36, 37.

### 2. The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this lawsuit, assisted by an experienced former federal magistrate judge serving as mediator. JAY Decl., ¶ 29. These circumstances weigh in favor of approval. *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also* Manual for Complex Litig. at § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Additionally, the parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for approval. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. JAY Decl., ¶ 30.

### 3. Plaintiffs Have Sufficient Information to Weigh the Benefits of Settlement

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and

weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted).

While the parties settled relatively early in the litigation, before Plaintiffs' putative class was certified, the parties had sufficient information to adequately evaluate the merits of the case. The parties exchanged significant information in conjunction with settlement negotiations that included the class size and demographics, information regarding the technical aspects of the breach, discovery of the breach, duration of the breach, Citrix's retention of third-party forensic investigators, and a detailed explanation of the remedial measures taken by Citrix following the breach. JAY Decl., ¶¶ 6, 31. Citrix also produced Rule 26 disclosures and certain documents responsive to Plaintiffs' first requests for production that were reviewed by Class Counsel in conjunction with the Settlement. Further, after reaching a settlement in principle, Class Counsel conducted confirmatory discovery on the size and scope of the class and Citrix provided a declaration detailing its implementation of the contractual business practice commitments discussed above. *Id*., ¶¶ 3, 9, 21, 31.

Additionally, Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. *Id*., ¶ 31. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached

between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 4. The Settlement Relief is Fair, Reasonable, and Adequate

In terms of relief offered, this Settlement is as comprehensive as nearly any other data breach settlement on record, and the specific benefits compare favorably to what has been previously obtained, including:

- A sizeable, $15,000 cap on out of pocket losses.

- Compensation for up to 5 hours of lost time at $25 per hour.

- Five years of three-bureau credit monitoring that would cost each class member $1,200.

- Five years of monitoring services automatically made available to all minors.

- Alternative cash payments for those class members who do not want credit monitoring.

- Access to five years of assisted identity restoration services.

For example, the relief made available under this Settlement compares very favorably to the relief made available to victims of large data breaches in common fund cases that recently received approval and provides for a significantly greater recovery on a per-person basis. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020) (describing settlement benefits made available from $380.5 million fund on behalf of 147 million class members); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *23-24 (D. Or. July 29, 2019) (describing settlement benefits made available from $32 million fund on behalf of 11 million class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (approving $115 million settlement on behalf of more than 79 million class members). The settlement fund also compares favorably to the relief offered in

comparably-sized cases. *See, e.g.*, *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (approving $3.25 million settlement on behalf of 61,000 class members). Additionally, this Settlement requires contractual business practice commitments that are narrowly tailored to prevent a breach like this from occurring again.

Class Counsel, a group with extensive experience in leading major data breach class actions, believe that the relief is fair, reasonable, adequate, and superior to many comparable settlements on record. JAY Decl., ¶ 28. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

### a.   The Risks, Costs, and Delay of Continued Litigation

The costs, risks, and delay of trial and appeal weigh in favor of settlement approval. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to survive likely motions practice (*e.g.*, a motion to dismiss and motion for summary judgment) and succeed at class certification. JAY Decl. ¶ 32.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *See In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. As recognized by other courts, data breach cases are especially risky, expensive, and complex given the unsettled nature of the law. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. at 315 (noting that "many of the legal issues presented in [] data-breach case[s] are novel").

The risk involved is highlighted by the fact that historically data breach cases have faced substantial hurdles even in making it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class members gain significant benefits without having to face further risk.

The delay attendant in continuing to litigate this case also favors approval of the Settlement. This litigation has been pending more than a year. Even before the COVID-19 pandemic, which will likely cause significant delays across federal civil cases, many more months and significant additional costs would be required for the parties and the Court to complete the pre-trial proceedings, summary judgment and *Daubert* motions, and class certification. After trial, the parties could appeal the Court's class certification and summary judgment decisions, which could take years to complete. Assuming the parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court or on appeal. JAY Decl. ¶ 33.

By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief now. A relatively early settlement is especially warranted in the data breach context because class members benefit *immediately* from protections like Credit Monitoring

Services and Identity Restoration Services that can help detect and prevent identity theft and fraud before misuse occurs, and assist class members in addressing any issues that arise, including by providing the protection of a $1 million insurance policy in case of identity theft or fraud *Id*., ¶ 34. At trial, there is a possibility that only class members who already experienced damages in the form of monetary losses would be able to recover. By contrast, this Settlement provides benefits to the *entire* class, including not only reimbursement for monetary damages and time, but also benefits like business practice commitments, an alternative cash payment or credit monitoring and insurance coverage that might not otherwise be available remedies at trial. *Id*.

Thus, the cost, risks, and delay of trial and appeal supports a finding that this Court will likely approve the Settlement.

### b.      The Method of Distributing Relief is Effective

The settlement distribution process, developed with Class Counsel's knowledge and experience overseeing the administration of dozens of data breach settlements, will be efficient and effective. Class members can easily file claims for Out-of-Pocket Losses, Attested Time, Credit Monitoring Services or Alternative Cash Payments; and it is not necessary to submit a claim to access Identity Restoration or Minor Monitoring Services. JAY Decl. ¶ 27. Documentation requirements are not onerous, and not even required for many benefits; and, there is a consumer-friendly dispute process if a claim is denied in whole or part. *Id*.

### c.      The Terms Relating to Attorneys' Fees are Reasonable

Class Counsel will separately move for attorneys' fees in the amount of $750,000 to be paid from the settlement fund and reimbursement of costs and expenses in an amount not to exceed $150,000 that will be set forth in the fee motion. Pursuant to the Settlement Agreement, Class

Counsel will file their motion for attorneys' fees and expenses within 10 days following an order granting preliminary approval and prior to the issuance of class notice. The class notice will explicitly state that Counsel are seeking attorneys' fees in the amount of $750,000 equaling 32.9% of the settlement fund and provide a link to the Settlement Website where class members can access the (already-filed) fee brief  so that they will have the opportunity to present their views on the fee request. SA, ¶ 89. Payment for attorneys' fees and expenses will not be issued until after the Effective Date of Settlement. *Id*.

"Although there is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee, an award of one-third of the common fund is consistent with the trend in this Circuit." *Gonzalez*, 2019 WL 2249941, at *6 (internal quotations omitted and citing cases); *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); Eisenberg, *et al*., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in the 11th Circuit is 33%).

While Class Counsel will provide a more thorough analysis of the reasonableness of its forthcoming motion for attorneys' fees and expenses, at this stage, the Court can conclude that it is likely to approve the Settlement for purposes of sending notice to the class, even if it has not yet made a final determination as to attorneys' fees and expenses.

## 5.  Agreements Required to be Identified by Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the parties, except as set forth in the Settlement Agreement. JAY Dec., ¶ 35.

### 6.      Class Members are Treated Equitably Relative to Each Other

The last requirement under Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all are eligible to receive reimbursement based on expenses incurred and time spent, not on any unequitable basis. JAY Dec., ¶ 35.

### C.      Certification of the Settlement Class is Appropriate

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed settlement. Here, the Settlement Class meets the requirements for certification under Rule 23(b)(3), so the Court should conclude that issuing notice is justified.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma*, 406 F. Supp. 2d at 1313-14 (quotations omitted). The Supreme Court has held that because a class settlement obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, the settlement context demands "undiluted, even heightened, attention" to "unwarranted or overbroad class definitions." *Id*. Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad

discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Because this case meets all of the requirements of Rule 23(a) and (b)(3), as set forth below, certification is appropriate.

### 1. The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)

#### a. Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, Citrix identified approximately 24,316 individuals affected by the Data Breach. Numerosity is thus easily satisfied.

#### b. Commonality

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking*, 275 F.R.D. at 659. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because class members are joined by the common questions of law and fact that arise from the same event—the Data Breach. As alleged by Plaintiffs, the critical issues posed by this action include: (1) whether and to what extent Citrix had a duty to protect and safeguard the PII of Plaintiffs and the Settlement Class from access to that PII by unauthorized third parties; (2) whether Citrix breached that duty

to Plaintiffs and the Settlement Class by failing to implement and maintain data security procedures and practices commensurate with the nature and scope of the PII compromised in the Data Breach; and (3) whether Plaintiffs and the Settlement Class were injured as a result of the Data Breach. These common issues aggregate toward the singular conduct of Citrix with respect to the Data Breach. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### c.      Typicality

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.") (internal quotations omitted). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of

the putative class because they arise from the same Data Breach and from the same legal duty Citrix had to secure the PII of Plaintiffs and the Settlement Class, comprising a clear nexus between Plaintiffs' claims and those of the Settlement Class Members. *Hines*, 334 F.3d at 1256. Typicality is thus satisfied.

**d.      Adequacy**

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. As noted above, the proposed Settlement Class Representatives are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. JAY Decl., ¶ 36. They each provided their PII to Citrix and were harmed because of the Data Breach. Additionally, Plaintiffs have vigorously prosecuted this case for the benefit of all Settlement Class Members by filing the underlying actions, reviewing pleadings, conferring with Counsel, and providing input in crafting and approving the Settlement. *Id.*

In addition, Class Counsel are qualified to represent the settlement class. As reflected in the Court's prior appointment, they have extensive experience in prosecuting data breach cases, having represented data breach victims in numerous cases across the country. JAY Decl., ¶ 37. In this case, they have spent considerable time investigating class members' injuries and claims and negotiating a well-informed Settlement on behalf of the class. Accordingly, the Rule 23(a) prerequisites have been met.

**e.      Predominance**

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011), and whether the proposed class is "sufficiently cohesive to

warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

In this case, the key predominating questions are whether Citrix had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class and whether Citrix breached that duty. The many common questions of fact and law that arise from Citrix's conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312-315 (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over "potential individual issues based on state-law variations"); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and CareCentrix's alleged conduct predominate over any individualized issues"); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue,

concluding such variations went only to trial management, which was inapplicable for settlement class). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Accordingly, the common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues.

### f.    Superiority

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. See Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this case that any class member wishes to litigate their claims individually, and there are no other cases that have been filed. And with the high cost of litigating a case like this—requiring expert investigation and testimony to prove how and why the data breach occurred—almost certainly swamping individual damages, individualized litigation is impracticable. *See In*

27

*re Checking*, 286 F.R.D. at 659 ("The class action fills an essential role when the [plaintiffs] would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

Finally, this Court is a desirable forum for this litigation. It is where each of the three consolidated cases was filed, and Citrix is incorporated here. Accordingly, resolution of this case through a class action settlement in this Court will achieve significant economies for the parties, the proposed settlement class, and the court, satisfying the superiority requirement. The Court respectfully should certify the Settlement Class, as the superiority requirement, along with all other requirements Rule 23(a) and (b), is satisfied.

### D.    The Proposed Class Notice Satisfies Rule 23

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice (Exhibit 1 to the Settlement Agreement) readily meets these requirements, and the notice program, using multiple modes of direct delivery (mail and email), constitutes the best practicable notice under the circumstances of this case. The Notice uses "plain English" to inform class members of, among other things, the nature of the class claims, the essential terms of the settlement, the date, time and place of the Final Approval Hearing, how to object or opt-out of the settlement, and the binding effect of the settlement on class members. The Notice also contains information regarding Counsel's request for fees and expenses, along with a link to the Settlement Website where the fee brief can be accessed. Thus, the notice satisfies the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently informs class

members of the terms of the proposed settlement and their available options, and is the best notice that is practicable under the circumstances.

### E.   The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines

In connection with the preliminary approval of the Settlement, Plaintiffs propose that the Court adopt the following schedule, which is set forth in the accompanying proposed order:

| Event | Timing |
|-------|--------|
| Deadline for Class Counsel to file motion for attorneys' fees, costs, and expenses | [10 days following entry of Preliminary Approval Order] |
| Deadline for Defendant to provide Settlement Class List to Settlement Administrator pursuant to paragraph 71 of the Settlement Agreement | [14 days following entry of Preliminary Approval Order] |
| Notice Deadline | [21 days following entry of Preliminary Approval Order] |
| Objection Deadline | [40 days after notice deadline] |
| Opt-Out Deadline | [40 days after notice deadline] |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Class member objections, which shall include a declaration from the Settlement Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | [21 days prior to Final Approval hearing] |
| Claims Deadline | [90 days after notice deadline] |
| Final Approval Hearing | No earlier than 90 days after entry of Preliminary Approval Order |

### V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order directing dissemination of the Class Notice, appointing Angeion

Group as Settlement Administrator, and setting a hearing for the purpose of deciding whether to

grant final approval of the settlement.

Dated: October 30, 2020                         Respectfully submitted,

/s/ *John A. Yanchunis*
John A. Yanchunis (Fla. Bar No. 324681)
Patrick A. Barthle II (Fla. Bar No. 99286)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@ForThePeople.com
pbarthle@ForThePeople.com

/s/ *J. Austin Moore*
Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com

/s/ *Gayle M. Blatt*
Gayle M. Blatt (*pro hac vice*)
**CASEY GERRY SCHENK**
**FRANCAVILLABLATT & PENFIELD**
**LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
gmb@cglaw.com

/s/ *Rosemary M. Rivas*
Rosemary M. Rivas (*pro hac vice*)
Rosanne L. Mah (*pro hac vice*)
**LEVI & KORSINSKY LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671

rrivas@zlk.com
rmah@zlk.com

*Plaintiffs' Interim Class Counsel*

/s/ *Herman J. Russomanno III*
Herman J. Russomanno III
Fla. Bar No. 21249
RUSSOMANNO & BORRELLO, P.A.
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
herman2@russomanno.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, I electronically filed the foregoing document with theClerk of Court using CM/ECF.  I also certify that the foregoing document is being served this dayon any and all counsel of record or pro se parties in the manner specified, either via transmissionof Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for thosecounsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/John A. Yanchunis