**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-cv-61350-ALTMAN/HUNT**

*In re: Citrix Data Breach Litigation*

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND
INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF LITIGATION ........................................................................... 2

III.    THE TERMS OF THE SETTLEMENT AGREEMENT .................................... 5

        A.      The Settlement Class............................................................................ 5

        B.      The Settlement Benefits ....................................................................... 5

                1.      Reimbursement of Out-of-Pocket Losses .................................. 5

                2.      Reimbursement for Attested Time............................................. 6

                3.      Identity Restoration Services ................................................... 6

                4.      Minor Monitoring Services....................................................... 7

                5.      Three-Bureau Credit Monitoring Services................................ 7

                6.      Alternative Cash Payments ....................................................... 8

        C.      Contractual Business Practice Commitments ........................................ 9

        D.      Attorneys' Fees, Costs, and Expenses ................................................... 9

        E.      Release of Claims .............................................................................. 10

IV.     CAFA NOTICE, CLASS NOTICE, AND CLAIMS ....................................... 10

V.      ARGUMENT.................................................................................................... 12

        A.      Class Certification for Settlement....................................................... 12

        B.      Fairness of the Settlement.................................................................. 13

        C.      The Proposed Settlement is Fair, Reasonable, and Adequate.............. 14

                1.      The Class was Adequately Represented .................................. 14

                2.      The Proposed Settlement was Negotiated at Arm's-Length.................... 14

3.     Plaintiffs Have Sufficient Information to Weigh the Benefits of Settlement ............................................................................... 15

4.     The Settlement Relief is Fair, Reasonable, and Adequate ........................ 16

     a.     The Risks, Costs, and Delay of Continued Litigation ................. 18

     b.     The Method of Distributing Relief is Effective ........................... 20

5.     Agreements Required to be Identified by Rule 23(e)(3) .......................... 20

6.     Class Members are Treated Equitably Relative to Each Other ................ 20

7.     Opinions from Class Counsel and Reaction from the Class .................... 21

VI.     ATTORNEYS' FEES AND TIMING OF PAYMENT .................................................... 22

VII.     CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Now*, *Inc. v. Claire's Stores*, *Inc.*,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) .............................................................. 21

*Amchem Prods.*, *Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................ 12, 13

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................................. 14

*Burrows v. Purchasing Power*, *LLC*,
  No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ......................... 12

*Elkins v. Equitable Life Ins. of Iowa*,
  No. CIVA96-296-CIV-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998).......................... 24

*Forcellati v. Hyland's*, *Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............................................................ 22

*Gonzalez v. TCR Sports Broad. Holding*, *LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) ..................................................... 16, 17

*Gustin v. Digges*,
  2009 WL 10670320 (M.D. Fla. Dec. 22, 2009) ........................................................ 24

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................... 18

*Hanley v. Tampa Bay Sports & Ent. LLC*,
  No. 8:19-CV-550-CEH-CPT, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020).......................... 23

*Health Ins. Innovations Sec. Litig.*,
  No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021)................. 23, 24

*Ibrahim v. Acosta*,
  326 F.R.D. 696 (S.D. Fla. 2018).............................................................................. 14

*In re Anthem*, *Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. Aug, 15, 2018)............................................................... 18

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011).............................................................................. 14

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993)............................................................................... 21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) ................................................................................ 19

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ..................................................... 18

*In re Target Corp. Customer Data Security Breach Litig.*,
    2015 WL 7253765 (D. Minn. Nov. 17, 2015) ................................................. 19, 20

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................. 18

*Johnson v. NPAS Solutions*, *LLC*,
    975 F.3d 1244 (11th Cir. 2020) ..................................................................... 4, 7, 8

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) ............................................................................... 22

*Lee v. Ocwen Loan Servicing*, *LLC*,
    2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ..................................................... 22

*Lipuma v. American Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................. 12, 15, 16, 21

*M.D. v. Centene Corp.*, *Inc.*,
    2020 WL 7585033 (S.D. Fla. Oct. 7, 2020) .......................................................... 22

*Nelson v. Mead Johnson & Johnson Co.*,
    484 F. App'x 429 (11th Cir. 2012) ...................................................................... 18

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................ 15

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ................................................................... 15, 22

*Sullivan v. DB Invs.*, *Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................... 22

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988) .................................................................... 21

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ........................................................................... 23

*Wolff v. Cash 4 Titles*, No.,
    03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .............................. 23

**Statutes**

Fla. Stat. §§ 501.201 ................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Federal Rule of Evidence 408 ..................................................................................................... 3

Plaintiffs Lee Milligan (on behalf of himself and his minor son), Lindsey Howard, Brandon Sargent, and Natalie Young ("Plaintiffs"), respectfully move for an order granting final approval of this class action settlement, including disbursement of the settlement funds and approval of Class Counsel's attorneys' fees, costs, and expenses.

## I.    INTRODUCTION[1]

On March 8, 2019, Citrix, a global technology company that provides cloud computing software and remote access products, informed Plaintiffs and class members that hackers had gained access to Citrix's internal network and exfiltrated information pertaining to approximately 24,000 current and former employees, their dependents or beneficiaries, or other third parties (the "Data Breach"). The information stolen in the Data Breach included names, Social Security numbers or other tax identification numbers, financial account numbers, passport numbers, limited health claims information, or other personal information ("Personal Identifying Information" or "PII"). The hackers accessed Citrix's internal network through what is known as "password spraying," a technique used by hackers to exploit weak passwords. The Federal Bureau of Investigation contacted Citrix on March 6, 2019, advising that it had reason to believe Iranian cyber criminals had gained access to the internal Citrix network and exfiltrated terabytes of data. Citrix confirmed that data was exfiltrated for about five months from October 13, 2018 through March 8, 2019. Following notification of the Data Breach, three class action cases were filed against Citrix by current and former employees seeking damages, statutory penalties, and injunctive relief on behalf of themselves and others who were affected.

Following significant arm's-length settlement negotiations, the parties negotiated a Settlement Agreement that received preliminary approval from the Court on January 26, 2021.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Amended Settlement Agreement ("SA"), available at Doc. 53-1.

The proposed Settlement provides for a non-reversionary $2,275,000 cash fund to pay for losses stemming from the breach, significant credit monitoring and identity restoration services valued at more than $26 million, and enhanced security measures designed to prevent another data breach. Further, minors are automatically eligible for Minor Monitoring Services without having to submit a claim, and the Settlement offers an Alternative Cash Payment for those who select it in lieu of Credit Monitoring. Since entry of the preliminary approval order, notice was sent to the Class, claim forms have been submitted, and class members' reaction to the Settlement has been overwhelmingly positive. No class members have objected to the Settlement, and only one has requested exclusion. Additionally, a preliminary analysis of the claims submissions establishes that there are sufficient funds available to make meaningful payments to all class members who submitted claims for every type of relief offered under the Settlement. Accordingly, Plaintiffs respectfully request that the Court conduct a final review of the settlement and approve it as "fair, adequate and reasonable" pursuant to Rule 23(e)(2).

## II.    SUMMARY OF LITIGATION

After the Data Breach was announced on March 18, 2019, three class action cases were filed against Citrix by current or former employees of the company. On July 15, 2019, this Court consolidated the three actions. On July 29, 2019, Plaintiffs, on behalf of themselves and others similarly situated, filed the Consolidated Class Action Complaint. (Doc. 18). The Complaint sought monetary, injunctive, and declaratory relief based on eight causes of action including: (1) negligence; (2) negligence *per se*; (3) violations of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*; (4) breach of contract; (5) breach of implied contract; (6) breach of fiduciary duty; (7) breach of confidence; and (8) declaratory judgment. On August 22, 2019, Citrix answered and asserted affirmative defenses. (Doc. 23). *See* Declaration of John A. Yanchunis, attached as **Exhibit 1** ("JAY Decl."), ¶ 2.

On September 26, 2019, the Court issued an order setting a trial and pre-trial schedule and referred the matter to mediation. (Doc. 28).  On November 5, 2019, the Court appointed John Yanchunis of Morgan & Morgan; J. Austin Moore of Stueve Siegel Hanson LLP; Gayle M. Blatt of Casey, Gerry, Schenk, Francavilla, Blatt & Penfield, LLP; and Rosemary M. Rivas of Gibbs Law Group LLP,[2] as Interim Class Counsel pursuant to Rule 23(g)(3) and Herman J. Russomanno III of Russomanno & Borrello, P.A. as Liaison Counsel (collectively "Class Counsel") (Doc. 35).

Following the appointment of Class Counsel, the parties exchanged initial disclosures pursuant to Rule 26(a)(1) and Plaintiffs served 47 requests for production of documents. *See* JAY Decl., ¶ 3. The parties thereafter began engaging in preliminary and then more formal settlement negotiations. This included an exchange of information Plaintiffs required to engage in settlement negotiations and the exchange of competing term sheets. *Id.*, ¶ 4.

To help facilitate settlement negotiations, the parties agreed on and retained the Honorable Jay C. Gandhi (Ret.) of JAMS ADR, a retired United States Magistrate Judge and highly experienced mediator, to conduct a mediation on March 26, 2020. JAY Decl., ¶ 5. As a condition of mediation, Class Counsel sought pertinent information from Citrix regarding the Data Breach, including the technical aspects of the breach, the company's discovery of the breach, the duration of the breach, Citrix's retention of third-party forensic investigators, and a detailed explanation of the remedial measures taken by Citrix following the breach. Citrix agreed to provide this information pursuant to Federal Rule of Evidence 408. *Id.*, ¶ 6.

In advance of the mediation, the parties briefed their respective positions on the facts, claims, defenses, and assessments of the continued risks of litigation before Judge Gandhi. JAY *Id.*, ¶ 7. On March 26, 2020, the parties participated in a full-day mediation session with Judge

---

[2] At the time of the Court's Order, Ms. Rivas was a partner with Levi & Korsinsky, LLP.

Gandhi that included attorneys and representatives for both parties. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Following nearly 10 hours of negotiations, the parties were able to reach an agreement on the substantive terms of the Settlement and execute a binding term sheet. *Id.*, ¶ 8. As a condition of Settlement, Citrix produced certain documents responsive to Plaintiffs' first requests for production of documents and provided a declaration confirming the size and scope of the Settlement Class. *Id.*, ¶ 9. The parties then worked together to prepare a comprehensive set of settlement documents, which were submitted to the Court in conjunction with Plaintiffs' motion for preliminary approval. *Id.*

On June 2, 2020, Plaintiffs filed an unopposed motion for an order directing class notice and granting preliminary approval of class action settlement. (Doc. 46). While that motion was pending, the U.S. Court of Appeals for the Eleventh Circuit issued an opinion in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1248 (11th Cir. 2020), which provided additional guidance regarding the timing for filing an attorneys' fee motion pursuant to Rule 23(h) and held that incentive or service awards in class action cases are foreclosed by Supreme Court precedent. *See id.* at 1252, 1257. Citing *Johnson*, this Court issued an order on October 1, 2020 denying Plaintiffs' motion for preliminary approval based on the timing of the attorneys' fee motion and the Settlement Agreement's contemplation of service awards for the class representatives. (Doc. 51); *see also* JAY Decl., ¶ 10.

Plaintiffs thereafter filed an amended motion for preliminary approval addressing the issues raised by the Court. (Doc. 53). On January 26, 2021, the Court entered an order granting preliminary approval of the Settlement. (Doc. 56). Plaintiffs filed their motion for attorneys' fees and costs on February 4, 2021, prior to the issuance of class notice. (Doc. 57). JAY Decl., ¶ 11.

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Settlement Class

The proposed Settlement Class is defined as the individuals identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Citrix that their personal information was or may have been compromised in the data breach initially disclosed by Citrix in or about March 2019. SA, ¶ 36. After de-duplication, the Settlement Administrator confirmed there are a total of 23,907 individual class members.[3] *See* Declaration of Ryan Chumley of Angeion Group ("Angeion Decl."), ¶ 6.

### B.     The Settlement Benefits

Citrix agreed to fund a non-reversionary cash settlement fund in the amount of $2,275,000.00. SA, ¶¶ 43, 44; JAY Decl. ¶ 12. The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

#### 1.     Reimbursement of Out-of-Pocket Losses

The first component of the Settlement is reimbursement of out-of-pocket losses and unreimbursed charges fairly traceable to the Data Breach up to $15,000 per individual ("Out-of-Pocket Losses"). *See* SA, ¶ 49. Examples of Out-of-Pocket Losses that are eligible for reimbursement through the Settlement include:

- Unreimbursed costs associated with fraud or identity theft;

- Professional fees including attorneys' fees, accountants' fees and fees for credit repair services;

- Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Costs of credit monitoring or other identity theft protection services incurred on or after October 13, 2018;

---

[3] The initial settlement class list provided by Citrix included a total of 24,316 class members.

- Costs associated with freezing or unfreezing credit with any credit reporting agency.

*See* Claim Form, Exhibit 2 to SA.

The documentation necessary to establish Out-of-Pocket Losses was not overly burdensome and could consist of documents such as receipts from third parties, highlighted account statements, phone bills, gas receipts, and postage receipts, among other relevant documentation. *See* SA, ¶ 50; JAY Decl., ¶ 13. For Settlement Class Members with minors affected in the Data Breach, a legal guardian had the opportunity to submit a separate claim for each minor affected. SA, ¶ 49; JAY Decl., ¶ 13. If a claim is rejected for any reason, class members will be provided notice and given the opportunity to cure any deficiencies. SA, ¶ 53; JAY Decl., ¶ 13.

### 2.    Reimbursement for Attested Time

The second component of the Settlement is reimbursement for time spent remedying issues related to the Data Breach ("Attested Time"). Settlement Class Members had the opportunity to make a claim for reimbursement for up to five hours at $25 per hour, totaling $125 per class member. *See* SA, ¶ 51. This is an important benefit as Settlement Class Members can receive payment for taking time out of their busy lives to address issues stemming from the Data Breach. For Settlement Class Members with minors affected in the Data Breach, a legal guardian could submit a separate claim for each minor affected. SA, ¶ 51. Likewise, the claims procedure provided claimants with notice of any deficiencies in their submission and the opportunity to cure. SA, ¶ 53; JAY Decl., ¶ 14.

### 3.    Identity Restoration Services

All Settlement Class Members will be entitled to access identity restoration services offered through Experian for a period of five years, regardless of whether they submit a claim under the Settlement ("Identity Restoration Services"). SA, ¶ 56; JAY Decl., ¶ 15. This coverage provides class members with access to fraud resolution specialists who can assist with important

tasks such as placing fraud alerts with the credit bureaus, disputing inaccurate information on credit reports, scheduling calls with creditors and other service providers, and working with law enforcement and government agencies to dispute fraudulent information. This Settlement benefit allows even those class members who did not submit a claim under the Settlement to have access to help in the event they experience fraud or identity theft in the future. JAY Decl., ¶ 15.

### 4.      Minor Monitoring Services

As part of the Settlement, a parent or legal guardian of a Settlement Class Member who is a minor at the time the settlement is final may enroll the minor in five (5) years of Experian's Minor Plus Monitoring Services ("Minor Monitoring Services"). SA, ¶ 57. These services will be automatically provided to all qualifying minors without the need to file a claim under the Settlement. JAY Decl., ¶ 16. Minor Monitoring Services include Social Security Number tracing to determine whether someone has applied for credit in the minor's name along with alerts of all names, aliases and addresses that become associated with the minor's credit file; internet surveillance that searches the web, chat rooms, and bulletin boards to identify trading or selling of the minor's personal information on the Dark Web; identity restoration and fraud resolution services; and $1,000,000 in identity theft insurance for material damages that may occur against a minor whose credit file is misused. *Id.*

### 5.      Three-Bureau Credit Monitoring Services

Another primary benefit in this Settlement is five years of free, three-bureau credit monitoring available to every Settlement Class Member who elected to enroll ("Credit Monitoring Services"). SA, ¶ 54. Credit monitoring is a service that monitors an individual's credit reports and alerts the individual when any change is made that could signal fraudulent activity. JAY Decl., ¶ 17. Credit changes can include new credit card or loan applications, new credit inquiries, existing account changes, and new public records or address changes, among others. *Id*. Credit monitoring

gives the individual the opportunity to confirm the accuracy of a credit change in real time and, if necessary, address the issue before fraud occurs or expands. *Id*.

There are three major credit reporting agencies in the U.S., Experian, Equifax and TransUnion. While many credit monitoring services only monitor an individual's credit activity with one agency, the more robust services monitor activity from all three major credit reporting agencies. This is important because each agency operates independently from the others, and the information each receives from creditors can be different. *Id*., ¶ 18. As such, utilizing a credit monitoring service that monitors an individual's reports with all three agencies ensures that there are no major gaps in coverage. Accordingly, the parties have made available to all class members a robust monitoring service through Experian IdentityWorks, which retails for approximately $19.99 month. *Id*. The Credit Monitoring Services were made available to all class members regardless of whether they submit a claim for Out-of-Pocket Losses or Attested Time. SA, ¶ 54.

The Credit Monitoring Services provide significant value to the class. While the parties were able to secure discounted pricing based on the size of the class, the actual market value of this settlement benefit can fairly be estimated at approximately $1,200 per class member ($19.99 per class member for 60 months), or over $26 million to the nearly 21,900 non-minor class members who were eligible to enroll. JAY Decl., ¶ 19.

### 6.    Alternative Cash Payments

In lieu of Credit Monitoring Services, class members had the opportunity to receive a cash payment in an amount equal to a *pro rata* distribution of the remaining settlement funds after payment is allocated for Identity Restoration Services, Minor Monitoring Services, Credit Monitoring Services, payments for Out-of-Pocket Losses, Attested Time, notice and administration costs, and attorneys' fees and expenses. SA, ¶ 55; JAY Decl., ¶ 20.

Class members are subject to an individual aggregate cap of $15,000 for total payments

under the Settlement. SA, ¶ 65. The non-reversionary structure of the Settlement will ensure that all Settlement funds will be used to directly benefit the Settlement Class. SA, ¶ 44; JAY Decl., ¶ 21. If there are funds remaining as the result of uncashed checks, such funds will be distributed as required by state law or to a non-profit organization approved by the Court following distribution of settlement payments. SA, ¶¶ 61-62; JAY Decl., ¶ 21.

### C.    Contractual Business Practice Commitments

In addition to the monetary compensation provided to class members by the Settlement, Citrix has agreed to adopt and implement certain business practice commitments and remedial measures for at least three years after the Effective Date, which are subject to Court enforcement. SA, ¶¶ 68-70. These commitments will be paid for by Citrix separate and apart from the Settlement Fund and include the following categories: (1) enhanced cybersecurity training and awareness program; (2) enhanced data security policies; (3) enhanced security measures; (4) further restricting access to personal information; and (5) enhanced monitoring and response capability. SA, ¶ 68; JAY Decl., ¶ 22. Citrix has provided to Class Counsel a declaration setting forth the specifics of its implementation of these measures. JAY Decl., ¶ 22.

### D.    Attorneys' Fees, Costs, and Expenses

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses approved by the Court. On February 4, 2021, prior to issuance of notice, Class Counsel moved for an attorneys' fee award of $750,000, equaling 32.9% of the settlement fund, and costs and expenses in the amount of $18,494.16. (Doc. 57); JAY Decl., ¶ 23. Before notice was issued to the class, the fee motion was posted to the Settlement Website so class members could access and review it prior to submitting a claim. SA, ¶ 41. No objections were made as to the motion for attorneys' fees and costs. JAY Decl., ¶ 23.

### E.      Release of Claims

In exchange for the benefits provided under the Settlement, class members will release any legal claims that may arise from or relate to the facts alleged in the Consolidated Complaint, as specified in Section XIII of the Settlement Agreement. SA, ¶¶ 85-88; JAY Decl., ¶ 24.

## IV.    CAFA NOTICE, CLASS NOTICE, AND CLAIMS

On January 26, 2021, the court appointed Angeion Group to serve as the settlement administrator and effectuate notice of the settlement to the class. (Doc. 56). Pursuant to 28 U.S. Code § 1715, Angeion caused CAFA Notice regarding the settlement to be sent to the Attorneys General of all states and territories, as well as the Attorney General of the United States on June 11, 2020. To date, Angeion has not received an objection from any government agencies. Angeion Decl., ¶ 5.

On February 8, 2021, Angeion received the Settlement Class List from the Defendant which included class members' names, last known mailing addresses, and in some cases personal e-mail addresses. *Id.,* ¶ 6. Following the de-duplication process, Angeion concluded there were a total of 23,907 individual class members, comprised of 22,246 adults and 1,661 minors. *Id.* These 23,907 individuals were then grouped into households based on same mailing address. *Id.,* ¶ 7. Angeion identified 17,047 unique mailing addresses and 3,725 email addresses for class members. *Id.* On February 15, 2021, the Settlement Website went live with links to important case documents, answers to frequently asked questions, and an online claim portal. *Id.,* ¶ 15.

On February 16, 2021, Angeion caused the notice to be mailed to all 17,047 household records associated to the 23,907 class members via the U.S. Postal Service (USPS). *Id.,* ¶ 9. Angeion also caused the Email Notice to be sent to the 3,682 valid email addresses. *Id.,* ¶ 13. All class members who were sent an email notice also received a mailed notice. *Id.* As of May 18, 2021, following a thorough skip tracing, forwarding and re-mail process, only 331 of the 17,047

notices (2.3%) were ultimately undeliverable. *Id.*, ¶ 11.

The deadline for class members to submit claim forms was May 17, 2021. Angeion Decl., ¶ 19. As of May 18, 2021, Angeion has received a total of 7,451 claim form submissions, including 7,390 online submissions and 61 submissions by mail. 241 of these claim form submissions were for Minor Claim Forms. *Id.* Angeion has conducted a preliminary review of the claim submissions and determined that 1,622 claims were submitted by verified class members, 37 claims were submitted by potential class members, and 5,792 claims were submitted by non-class members.[4] *Id.*, ¶ 20.

Of the 1,659 claim forms submitted by verified or potential class members, 99 submitted a claim for reimbursement of Out-of-Pocket Losses, totaling $339,684.98 after application of the individual caps. *Id.*, ¶ 21. Of the 99 claims for reimbursement of Out-of-Pocket Losses, 48 submitted documentation to support their claim, as is required under the Settlement, totaling $185,643.51 after application of the individual caps. *Id.*

Additionally, 337 verified or potential class members submitted a claim for reimbursement of Attested Time, totaling $37,110.42 after application of the individual caps. *Id.*, ¶ 22. Finally, of the 1,659 claims forms submitted by verified or potential class members, 662 class members opted to enroll in credit monitoring and 875 class members opted for an alternative cash payment. *Id.*, ¶ 24. As discussed further below, this preliminary claims data suggests that there will be more than sufficient Settlement funds available to make full payments to all class members for every type of relief offered under the Settlement.

Angeion will review all claims and send deficiency notices to class members whose

---

[4] The volume of claim submissions from non-class members was potentially the result of the settlement being posted to one or more class action settlement aggregation websites that encourage the filing of mass claims. Angeion Decl., ¶ 20 n. 1.

claimed losses were not sufficiently supported or who left portions of their claim form blank. Angeion Decl., ¶ 26. Pursuant to the Settlement Agreement, class members will then have 21 days to cure their claims. SA, ¶ 53. Non-class members will receive a deficiency notice from the Settlement Administrator informing them that they are not members of the class and not eligible to receive benefits from the Settlement. Angeion Decl., ¶ 26.

Angeion received only one request to be excluded from the Settlement. *Id.*, ¶ 25. No class members objected to the Settlement. *Id.*

## V.   ARGUMENT

### A.   Class Certification for Settlement

When plaintiffs seek class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC,* No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem Products, Inc.,* 521 U.S. at 620.

This Court previously analyzed each relevant factor at the preliminary approval stage and concluded that the prerequisites of Rules 23(a) and (b)(3) have been met. Specifically, this Court found that the numerosity requirement of Rule 23(a)(1) is satisfied because the class includes approximately 24,000 members. (Doc. 56 at 2-3). Likewise, the commonality requirement of Rule

23(a)(2) is satisfied because there are questions of law and fact common to the class members, which predominate over any individual questions. *Id*. at 3.

Additionally, the typicality requirement of Rule 23(a)(3) is met because Plaintiffs are victims of the data breach and their claims are typical of the claims of the class members. *Id*. Further, the Court found that the adequacy requirement of Rule 23(a)(4) was satisfied because "Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all Class Members." *Id*. This Court also found that the predominance and superiority requirements of Rule 23(b)(3) were met. Specifically, this Court concluded that "[c]lass treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy." *Id*. Nothing has occurred in the interim that should disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and 23(b)(3) and that certification for settlement purposes is appropriate.

### B.      Fairness of the Settlement

Pursuant to Rule 23(e), a court may approve a class action settlement only after a hearing and only on finding that it is "fair, reasonable, and adequate" after considering whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit can also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration

of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* (citations omitted). As this Court preliminarily determined, each of the relevant factors support the fairness of the proposed settlement.

### C.   The Proposed Settlement is Fair, Reasonable, and Adequate

#### 1.   The Class was Adequately Represented

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted). Here, the class representatives have the same interests as other class members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them as Settlement Class Counsel pursuant to Rule 23(g), and the record shows Class Counsel worked diligently to bring this case to a positive resolution. *See* JAY Decl., ¶¶ 37-38.

#### 2.   The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this lawsuit, assisted by an experienced former federal magistrate judge serving as mediator. JAY Decl., ¶ 30.

The existence of an experienced neutral overseeing arm's-length negotiations between sophisticated parties weighs in favor of final approval. *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the

absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also* Manual for Complex Litig. at § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted). Additionally, the parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for final approval. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. JAY Decl., ¶ 31.

### 3. Plaintiffs Have Sufficient Information to Weigh the Benefits of Settlement

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted).

While the parties settled relatively early in the litigation, before a litigation class was certified, the parties had sufficient information to adequately evaluate the merits of the case. The parties exchanged significant information in conjunction with settlement negotiations that included the class size and demographics, information regarding the technical aspects of the breach, discovery of the breach, duration of the breach, Citrix's retention of third-party forensic

investigators, and a detailed explanation of the remedial measures taken by Citrix following the breach. JAY Decl., ¶¶ 6, 32. Citrix also produced Rule 26 disclosures and certain documents responsive to Plaintiffs' first requests for production that were reviewed by Class Counsel in conjunction with the Settlement. Further, after reaching a settlement in principle, Class Counsel conducted confirmatory discovery on the size and scope of the class and Citrix provided a declaration detailing its implementation of the contractual business practice commitments discussed above. *Id.*, ¶¶ 3, 4, 9, 32.

Additionally, Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. *Id.*, ¶ 32. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 4.     The Settlement Relief is Fair, Reasonable, and Adequate

In terms of relief offered, this Settlement is as comprehensive as nearly any other data breach settlement on record, and the specific benefits compare favorably to what has been previously obtained, including:

- A sizeable, $15,000 cap on out of pocket losses.
- Compensation for up to 5 hours of lost time at $25 per hour.
- Five years of three-bureau credit monitoring that would cost each class member $1,200.

- Five years of monitoring services automatically made available to all minors.
- Alternative cash payments for those class members who do not want credit monitoring.
- Access to five years of assisted identity restoration services made automatically available to all class members.

Although claim submissions are still being vetted, the preliminary claims data suggests that there will be more than sufficient Settlement funds available to make full payments to all class members for every type of relief offered under the Settlement. JAY Decl., ¶ 26. The Settlement Agreement defines the "Net Settlement Fund" as the amount of funds available after the deduction of costs for notice and administration (estimated to be $64,927), attorneys' fees ($750,000) and expenses ($18,494.16), and the costs for Minor Monitoring Services, Identity Restoration, and three-bureau Credit Monitoring Services claimed by class members (currently totaling $149,706.74 based on claim submissions from verified and potential class members). *Id*.

If costs for notice and administration approximate their estimated amount, and fees and expenses are approved in the amounts requested, $1,291,872.10 will remain in the Net Settlement Fund to pay claims for Out-of-Pocket Losses, Attested Time, and Alternative Cash Payments. *Id*. Based on current claims data, the maximum possible exposure for payment of Attested Time and Out-of-Pocket Losses to verified and potential class members is $376,318.32. Angeion Decl., ¶ 23; JAY Decl. ¶ 27. Thus, even in the unlikely event *all* claims for Out-of-Pocket Losses and Attested Time are approved, there will be $915,553.78 available to split evenly among the 875 verified and potential class members who elected alternative cash payments—resulting in individual payouts of approximately $1,046.35 per claimant. Consequently, there are sufficient funds available to pay meaningful amounts for every type of relief offered under the Settlement. JAY Decl. ¶ 27.

The Settlement also provides for meaningful non-monetary relief that includes contractual business practice commitments narrowly tailored to prevent a breach like this from occurring again. JAY Decl., ¶ 28. Class Counsel, a group with extensive experience in leading major data breach class actions, believe that the relief is fair, reasonable, adequate, and superior to many comparable settlements on record. JAY Decl., ¶ 29. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

### a.    The Risks, Costs, and Delay of Continued Litigation

The costs, risks, and delay of trial and appeal weigh in favor of settlement approval. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to survive likely motions practice (*e.g.*, motions for summary judgment and *Daubert* motions) and succeed at class certification. JAY Decl., ¶¶ 33, 34. Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). As recognized by other courts, data breach cases are especially risky, expensive, and complex given the unsettled nature of the law. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. Aug, 15, 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel").

The risk involved is highlighted by the fact that historically data breach cases have faced substantial hurdles even in making it past the pleading stage. *See Hammond v. The Bank of N.Y.*

*Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and class members gain significant benefits without having to face further risk.

The delay attendant in continuing to litigate this case also favors approval of the Settlement. Even before the COVID-19 pandemic, which will likely continue to cause significant delays across federal civil cases, many more months and significant additional costs would be required for the parties and the Court to complete the pre-trial proceedings, summary judgment and *Daubert* motions, and class certification. After trial, either party could appeal the Court's class certification and summary judgment decisions, which could take years to complete. Assuming the parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court or on appeal. JAY Decl. ¶ 34.

By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief now. A relatively early settlement is especially warranted in the data breach context because class members benefit *immediately* from protections like Credit Monitoring Services and Identity Restoration Services that can help detect and prevent identity theft and fraud before misuse occurs, and assist class members in addressing any issues that arise, including by providing the protection of a $1 million insurance policy in case of identity theft or fraud. *Id.*, ¶ 35. At trial, there is a possibility that only class members who already experienced damages in the

form of monetary losses would be able to recover. By contrast, this Settlement provides benefits to the *entire* class, including not only reimbursement for monetary damages and time, but also benefits like business practice commitments, an alternative cash payment or credit monitoring and insurance coverage that might not otherwise be available remedies at trial. *Id*.

Thus, the cost, risks, and delay of trial and appeal support final approval of the Settlement.

### b.     The Method of Distributing Relief is Effective

The settlement distribution process, developed with Class Counsel's knowledge and experience overseeing the administration of dozens of data breach settlements, was efficient and effective. The claim form was straightforward and allowed class members to make claims for Out-of-Pocket Losses, Attested Time, Credit Monitoring Services or Alternative Cash Payments. Class members were notified that they could access other settlement benefits such as Identity Restoration or Minor Monitoring Services without filing a claim. JAY Decl. ¶ 25. Documentation requirements were not onerous, and not even required for many benefits, and all class members will have an opportunity to cure any claim that is determined to be deficient in some respect. *Id*.

### 5.     Agreements Required to be Identified by Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no separate agreement between the parties. JAY Decl., ¶ 36.

### 6.     Class Members are Treated Equitably Relative to Each Other

The last requirement under Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all class members equitably relative to one another because all are eligible to receive the same settlement benefits for a variety of harms that flowed from the breach. JAY Decl., ¶ 36.

### 7.     Opinions from Class Counsel and Reaction from the Class

In addition to the factors discussed above, the Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of *counsel*.'") (citations omitted). As noted above, Class Counsel wholeheartedly endorse the Settlement and believe it is superior to comparable data breach settlements on record. JAY Decl., ¶ 29.

"[T]he reaction of the class is [likewise] an important factor." *Lipuma*, 406 F. Supp. 2d at 1324. Thus, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable. *See id*. The Settlement Class was given ample opportunity to review and object to the notice of proposed class action settlement and Plaintiff's application for attorneys' fees, costs, and expenses—which was filed on February 4, 2021 (Doc. 57)—prior to the issuance of notice. The deadline for class members to opt-out or object was March 28, 2021. Only one class member requested exclusion and no class members objected to the Settlement, Angeion Decl., ¶ 25, which "strongly favors" final approval. *Access Now, Inc. v. Claire's Stores, Inc*., 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement.").

The multi-faceted relief available under the Settlement was also well-received by the class, as reflected by the class participation rate. As recognized by many courts, "[t]he reality is the number of class members who actually file claims [in class action settlements] is relatively low.

The prevailing rule of thumb with respect to consumer class actions is a claims rate of 3-5 percent." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (internal marks and quotations omitted). Indeed, "a claim rate as low as 3 percent is hardly unusual in consumer class actions." *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (collecting cases); *see also Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *22 (S.D. Fla. Sept. 14, 2015) (citing case for proposition that "claims rates in consumer class settlements 'rarely' exceed 7%, 'even with the most extensive notice campaigns'") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc)). Here, nearly 7% of verified and potential class members made claims under the Settlement during the claims period. This is not only on the upper-echelon for consumer class actions—it is particularly high in the context of a data breach case, which typically involve relatively low dollar claims and a class population who may not have yet suffered out-of-pocket losses. JAY Decl., ¶ 28. Accordingly, the reaction of the Settlement Class has been overwhelmingly positive and supports the fairness of the Settlement. *See, e.g., M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *7 (S.D. Fla. Oct. 7, 2020) ("low percentage of objections demonstrates the reasonableness of the settlement and supports its approval as fair and reasonable") (cleaned up); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("low resistance to the settlement . . . weighs in favor of approving the settlement.").

For these reasons, the Court should have no hesitation affirming its preliminary conclusion that the Settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

## VI.   ATTORNEYS' FEES AND TIMING OF PAYMENT

On February 4, 2021, Class Counsel filed a motion seeking attorneys' fees in the amount of $750,000, equaling 32.9% of the settlement fund. (Doc. 57). As set forth in their motion, Class Counsel believe this request is appropriate given a number of factors, including the time, effort,

and skill Class Counsel brought to this litigation and results achieved. JAY Decl., ¶ 39. Payment for attorneys' fees will not be issued until after the Effective Date of Settlement. SA, ¶ 89.

As previously detailed, Class Counsel's fee request is supported by awards made in similar cases as "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33 1/3% to class counsel)). At the time Plaintiffs filed their motion for attorneys' fees, Class Counsel's combined lodestar was $958,160.00, resulting in a negative multiplier of 0.78. Since that filing, Class Counsel have continued to spend time preparing for final approval, working with the Settlement Administrator on notice and administration, and communicating with class members regarding the settlement terms and timing of payments. Accordingly, the negative multiplier has increased and will continue to do so until the Settlement is fully administered. JAY Decl., ¶ 40. The negative multiplier supports the reasonableness of the fee request. *See In re Health Ins. Innovations Sec. Litig*., No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021) (holding that "negative multiplier of 0.33" supports reasonableness of fee request where "[t]ypically, courts award a [positive] multiplier range of 2.5 to 4 in class actions."), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

In addition, the lack of objections by class members supports the fee request. Plaintiff and Class Counsel filed their motion for attorneys' fees on February 4, 2021 (Doc. 57) and posted it to the Settlement Website the following day. JAY Decl., ¶ 41. Notice was sent to settlement class

members via U.S. mail informing them that Class Counsel would seek $750,000 equaling 32.9% of the Settlement Fund and provided instructions regarding how to review the fee motion. *Id*. The lack of objections to Class Counsel's fee request supports a finding that it is reasonable and should be approved. *See In re Health Ins. Innovations Sec. Litig*., 2021 WL 1341881 at *12 ("The lack of objections by the Class also supports the Counsel's fee request" equaling one-third of settlement fund); *Gustin v. Digges*, 2009 WL 10670320, at *3 (M.D. Fla. Dec. 22, 2009) ("the lack of objections by Settlement Class members, substantiate the [attorneys' fee] award of 33%" of settlement fund); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-T-17B, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998) ("The lack of objections is itself important evidence that the requested fees are fair.").

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' motion for final approval of the Settlement, awarding Class Counsel attorneys' fees in the amount of $750,000 and litigation costs and expenses in the amount of $18,494.16, and entering final judgment in this matter. In accordance with the Amended Settlement Agreement, Plaintiffs request that the Court retain jurisdiction for the limited purpose of effectuating an additional settlement distribution in the event there are funds remaining as the result of unclaimed settlement funds. *See* SA, ¶¶ 23, 62.

Dated: May 20, 2021                    Respectfully submitted,

/s/ *John A. Yanchunis*
John A. Yanchunis (Fla. Bar No. 324681)
Patrick A. Barthle II (Fla. Bar No. 99286)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@ForThePeople.com
pbarthle@ForThePeople.com

/s/ *J. Austin Moore*
Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com

/s/ *Gayle M. Blatt*
Gayle M. Blatt (*pro hac vice*)
**CASEY GERRY SCHENK**
**FRANCAVILLABLATT & PENFIELD**
**LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
gmb@cglaw.com

/s/ *Rosemary M. Rivas*
Rosemary M. Rivas (*pro hac vice*)
Rosanne L. Mah (*pro hac vice*)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
rmr@classlawgroup.com
rlm@classlawgroup.com

_/s/ Herman J. Russomanno III_
Herman J. Russomanno III
Fla. Bar No. 21249
**RUSSOMANNO & BORRELLO, P.A.**
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
herman2@russomanno.com

_Settlement Class Counsel_

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on any and all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ John A. Yanchunis_